UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MOOG, INC.,                              *
                                         *
            Plaintiff,                   *
                                         *
      v.                                 *          Civil No. 1:19-cv-12066-IT
                                         *
CLEARMOTION, INC.,                       *
                                         *
            Defendant.                   *

<u>MEMORANDUM AND ORDER</u>

October 21, 2020

TALWANI, D.J.

Following the termination of their business relationship, Plaintiff Moog, Inc. ("Moog")

brought this action against Defendant ClearMotion, Inc. ("ClearMotion"), asserting ten claims:

(1) breach of a non-disclosure agreement ("NDA"); (2) breach of a Memorandum of

Understanding ("MOU"); (3) breach of the implied covenant of good faith and fair dealing; (4)

breach of an oral contract; (5) promissory estoppel; (6) unjust enrichment; (7) unfair and

deceptive acts and practices under Mass. Gen. Laws ch. 93A, § 11; (8) misappropriation of

confidential and proprietary information; (9) misappropriation of trade secrets under Mass. Gen.

Laws ch. 93, §§ 42, 42A-42C; and (10) misappropriation under the Defend Trade Secrets Act, 18

U.S.C. § 1836, et seq. ("DTSA"). Compl. [#1]. Defendant's pending <u>Motion to Dismiss the</u>

<u>Complaint</u> [#21] seeks dismissal of all claims. For the following reasons, the <u>Motion to Dismiss</u>

<u>the Complaint</u> [#21] is DENIED.

## I.      Factual Background as Alleged in the Complaint

Moog is a New York corporation that designs and manufactures precision motion control

products and systems for cars. Compl. ¶ 5 [#1]. In or around 2013, Moog acquired the assets of

1

Aspen Motor Technologies ("Aspen") and merged Aspen into Moog. Id. ¶ 6. ClearMotion is a global automotive technology company, formerly known as Levant Power Corporation ("Levant"), incorporated in Delaware with its principal place of business at Billerica, Massachusetts. Id. ¶¶ 7–8.[1] Beginning in 2012, ClearMotion formed a relationship with Moog to design and develop a brushless motor for ClearMotion's Activalve product, an active suspension system designed to detect "road imperfections and adjust the [car's] wheels" as needed. Id. ¶¶ 13–14.

On or about June 25, 2012, ClearMotion and Moog entered into an NDA [#1-1] covering the use of confidential information exchanged while Moog developed the motor, which the parties referred to as the "Aspen Assembly." Id. ¶ 18. The NDA [#1-1] required the party which received confidential information from the disclosing party ("Discloser") to maintain the information "in strict confidence and to exercise all reasonable precautions to prevent unauthorized access" to the information and stated that the receiving party could not "directly or indirectly, use, cause or permit the use of any Confidential Information to compete in any way with Discloser, except when used for a 'Permitted Purpose.'" Compl. ¶¶ 19-20 [#1]; NDA ¶ 1.1 [#1-1].[2] The parties further agreed that they would not attempt or permit any other person to attempt to "reverse engineer, disassemble, decompile, or otherwise discover the trade secrets with respect to any technology, equipment, device, software, hardware, or other information or other item provided by Discloser hereunder . . . ." Compl. ¶ 21 [#1]; NDA ¶ 3 [#1-1]. To the

---

[1] In the Complaint [#1], Plaintiff refers to Moog and Aspen, collectively, as "Moog" and to ClearMotion and Levant, collectively, as "ClearMotion." The court follows suit in recounting the facts alleged in the complaint.

[2] The NDA [#1-1] defined "Permitted Purpose" as the "partnering transaction or relationship between the Parties." Compl. ¶ 20 [#1]; NDA ¶ 1.1 [#1-1].

extent a breach occurred, the parties agreed that "any breach or threatened breach of this Agreement by a Recipient would cause not only financial harm, but irreparable harm to Discloser." Compl. ¶ 23 [#1]; NDA ¶ 5.3 [#1-1].

On or about September 14, 2015, ClearMotion and Moog entered into an MOU [#22-1][3] setting forth the parties' respective understandings and obligations related to Moog's development and anticipated production of the Aspen Assembly.[4] Id. ¶ 24. The parties acknowledged that "an ultimate relationship between our two companies with respect to the Products will be documented by a formal definitive manufacturing and supply agreement to which we shall mutually agree (the 'Agreement') assuming [ClearMotion] would like to proceed with the subsequent phases for development and manufacture of the Products." Id. See also MOU 1-2 [#22-1]. "[I]n the meantime," it was the parties' intention that the MOU [#22-1] would "govern our agreements and understandings" with respect to certain matters. MOU 1 [#22-1]. As relevant here, the MOU [#22-1] stated that "[i]n the event that any intellectual property is developed or discovered during any activities conducted by the parties pursuant to this MOU" and "relates specifically to the Aspen Assembly, or to motor design," Moog would own all rights therein, and ClearMotion would retain a non-exclusive license, except that ClearMotion would retain an exclusive license to the technology for its market, that "shall expire at the end of three (3) completed years of High Volume Production." Id. at 2. The MOU [#22-1] provided further that "[ClearMotion] would be responsible for paying for all tooling as specified in the Budgetary

_____

[3] Although Moog did not attach the MOU [#22-1] to its Complaint [#1], ClearMotion filed the document with its Motion to Dismiss [#22].

[4] The MOU [#22-1] included sections titled pricing, ownership of technology and developments, exclusivity of the license to the technology, payment of tooling, the development schedule, and term sheet.

Quote (all of which [Moog] will purchase only with [ClearMotion's] advance approval)." Id. at 2. The MOU [#22-1] also contained an attached proposed term sheet, which specified that "[t]his MOU does not constitute any acceptance of the terms set forth in the attached term sheet." Id. at 3. The non-binding term sheet reiterated that Moog was to develop, manufacture, and supply the product and that ClearMotion was to retain an exclusive license to the technology for ClearMotion's market for the first three years of high volume production, and "[h]igh volume production terms will be mutually agreed upon prior to start of production." Id. at 4–5.[5]

In reliance on the MOU [#22-1] and ClearMotion's continuing representations and promises, Moog undertook extensive and costly efforts to develop and finalize the Aspen Assembly exclusively for ClearMotion. Compl. ¶¶ 30–35 [#1]. Moog completed development of the Aspen Assembly in late 2018 and was prepared to launch its production and sale, entering into an agreement with a manufacturing facility. Id. ¶¶ 33–34.

In January 2019, after Moog completed its design process necessary to start high-volume manufacturing, ClearMotion notified Moog that Moog had not been selected as ClearMotion's exclusive vendor for high-volume production of the Aspen Assembly and terminated the parties' relationship. Id. ¶¶ 30–48. Moog was not compensated for its development efforts, and ClearMotion reimbursed Moog only a small portion of its tooling costs. Id. ¶¶ 40–41.

In addition, ClearMotion disclosed Moog's confidential and trade secret information while soliciting other vendors to manufacture and supply Moog's Aspen Assembly and

---

[5] Moog alleges that "the MOU also reflected the parties' agreement that the purpose of Moog's development efforts was that Moog would be ClearMotion's exclusive supplier of the Aspen Assembly for a period of high volume production. In other words, Moog was to develop, manufacture, and supply the product, and ClearMotion was to purchase the product in high volume from Moog." Compl. ¶ 26 [#1].

continued to wrongfully disclose and use Moog's confidential and trade secret information even though Moog sent letters on January 21, 2019, and September 19, 2019, to remind ClearMotion of its obligations under the parties' NDA [#1-1]. Id. ¶¶ 46–49.

## II.   Discussion

### A.   *Standard of Review*

In evaluating a motion to dismiss, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations ommitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

In deciding a motion to dismiss, a court is ordinarily limited to considering "only the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014). Where, as here, however, "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

B.    *Breach of Contract (Counts I-II)*

To state a claim for breach of a written contract, a plaintiff must prove that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007). The plaintiff must allege more than that "the facts [demonstrate a] breach of that contractual relationship." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996). Rather, the plaintiff must describe "with 'substantial certainty,' the specific contractual promise the defendant failed to keep." Brooks, 480 F.3d at 586 (citing Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir.2007)).

Moog asserts breach of two contracts: the NDA [#1-1] and the MOU [#22-1]. Regarding the NDA [#1-1], ClearMotion does not contest that it was bound by the contract but argues that Moog failed to specify the contractual promises that were breached. Mem. In Support of Mot. To Dismiss ("Def's Mem.") 6 [#22]. ClearMotion argues that the claim must be dismissed because Moog did not identify (1) what confidential information or trade secrets ClearMotion allegedly disclosed, (2) to whom it disclosed this information, (3) when it disclosed this information, and (4) where or how this disclosure took place. But while Moog must do more than allege, in conclusory fashion, that ClearMotion breach the NDA [#1-1], it need not provide the level of detail that ClearMotion claims. At this stage in the litigation, this court must draw all reasonable inferences in Moog's favor, and where Moog has alleged that it developed the Aspen Assembly, that it retained ownership of the technology and the underlying intellectual property, and that ClearMotion selected a different vendor to manufacture the Aspen Assembly, the inference that ClearMotion disclosed "confidential and trade secret information" while "soliciting other vendors to manufacture and supply" the motor is certainly plausible. Compl. ¶ 46 [#1]. Moog has

therefore sufficiently pleaded breach of the NDA [#1-1].

Turning to the MOU [#22-1], Moog asserts that ClearMotion breached its contractual obligations by (1) "failing and refusing to engage Moog as its exclusive vendor for high volume production" of the Aspen Assembly and (2) failing to fully reimburse Moog for tooling and machinery costs. Compl. ¶¶ 63-64. ClearMotion counters that the MOU [#22-1] created no obligation to engage Moog as an exclusive vendor or to require reimbursement of tooling costs without ClearMotion's prior approval. Def's Mem. 4–6 [#22]. A review of the MOU [#22-1] suggests that the parties intended that a final definitive agreement would subsequently be executed regarding the supply and manufacture of the Aspen Assembly. ClearMotion argues that "the fact that parties contemplate[d] the execution of a final written agreement effects a strong inference that the parties [did] not intend to be bound by earlier negotiations or agreements until the final terms [were] settled." TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 (1st Cir. 2007) (quoting Rosenfield v. U.S. Trust Co., 290 Mass. 210, 216 (1935)). But, unlike in TLT Constr. Corp., where "at no point did either party behave as if it had a contract" and the plaintiff repeatedly stated that it would not proceed with the project without an executed contract, id. at 136, here, the MOU [#22-1] represents an agreement as to at least an initial phase of their relationship, and Moog alleges that the parties worked extensively on the project for more than two years for the purpose of carrying out their obligations under the MOU [#22-1]. Compl. ¶¶ 30-35. "There is no surer way to find out what parties meant, than to see what they have done." TLT Constr. Corp., 484 F.3d at 136 (quoting Pittsfield & N. Adams R.R. Corp. v. Boston & Albany R.R. Co., 260 Mass. 390, 398 (1927) (quoting Brooklyn Life Ins. Co. of N.Y. v. Dutcher, 95 U.S. 269, 273 (1877))).

Moog pleads that the MOU [#22-1] reflected the parties' understanding that Moog would

be ClearMotion's exclusive supplier of the Aspen Assembly for a period of high-volume production and that the parties acted on that understanding over a period of years. The inclusion in the MOU [#22-1] of an exclusive license, tied to years of "High Volume Production," makes Moog's claim at least plausible. The allegations of the complaint are enough here "to raise a reasonable expectation that discovery will reveal evidence of" a breach of the MOU [#22-1]. Twombly, 550 U.S. at 556.

Similarly, Moog sufficiently pleads that ClearMotion breached the MOU [#22-1] by failing to fully reimburse Moog for its tooling and machinery costs. ClearMotion acknowledges that the MOU [#22-1] obligated it to reimburse Moog for some tooling costs but claims that its obligation was limited to reimbursement "as specified in the Budgetary Quote," which required ClearMotion's prior approval. Def's Mem. 5 [#22]; MOU 2 [#22-1]. Because Moog's Complaint [#1] does not specify how such approval was sought, ClearMotion argues that claim must be dismissed. But here, again, ClearMotion overstates the specificity required to survive a motion to dismiss. Moog need only adduce sufficient facts to "provide fair notice to the defendants and state a facially plausible legal claim," Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011), which it has succeeded in doing. The court accordingly denies ClearMotion's motion to dismiss Moog's breach of contract claims.

C.   *Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)*

Count III is based on Moog's allegations that ClearMotion breached the implied covenant not to impair Moog's ability to perform and realize the fruits of the NDA [#1-1] and the MOU [#22-1], and that ClearMotion did so in bad faith. Compl. ¶¶ 36-49, 73–74 [#1]. See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014) (implied breach of covenant of good faith and fair dealing requires plaintiff to prove lack of good faith).

Under Massachusetts law, "the covenant of good faith and fair dealing is implied in every contract," UNO Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004), and provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471–72 (1991). While the implied covenant may not "be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship," UNO Rests., 441 Mass. at 385–86, the essential inquiry is "whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 612 (D. Mass. 2016).

Where Moog has pleaded that ClearMotion unexpectedly and unilaterally terminated the parties' relationship once ClearMotion had received the benefit of the agreements but before Moog had the opportunity to do so, Moog has stated a claim for breach of the duty of good faith and fair dealing implied in the NDA [#1-1] and the MOU [#22-1]. Compl. ¶ 74 [#1]. The court therefore denies ClearMotion's motion to dismiss this claim.

D.      *Breach of Oral Contract (Count IV)*

In addition to its claims for breach of the NDA [#1-1] and MOU [#22-1], Moog alleges that ClearMotion breached an oral contract that Moog would be ClearMotion's exclusive supplier of the Aspen Assembly. Compl. ¶¶ 79-82 [#1]. ClearMotion argues that the claim should be dismissed because the Complaint [#1] is silent as to the terms of the supposed oral contract, including who made an offer, when the offer was made, or when and how it was accepted. Def's Mem. 10 [#22]. Alternatively, ClearMotion argues that the asserted oral contract

is barred by the Statute of Frauds. Id.

"Oral contracts are as enforceable as written contracts so long as they are not barred by the Statute of Frauds." Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 599 n.40 (2007). To adequately plead a breach of a contract claim under Massachusetts law, a plaintiff need only allege "that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016).

Moog has alleged that, in return for Moog's substantial development efforts, ClearMotion orally promised that Moog would be the exclusive supplier of the Aspen Assembly. Compl. ¶ 80. Moog also alleges that ClearMotion breached that agreement (1) when it terminated the parties' relationship following Moog's development of the Aspen Assembly but before Moog could benefit from the agreed-upon manufacture and sale of the product and (2) when it considered other suppliers for the Aspen Assembly. Id. at ¶¶ 81-82. Finally, Moog alleges that, as a result of this breach, it suffered loss of revenue, profits, and business opportunities, among other damages. Id. at ¶ 85. Accordingly, Moog has pleaded all elements of a breach of oral contract claim.

Additionally, the Statute of Frauds does not warrant dismissal. Under Massachusetts law, the Statute of Frauds, Mass. Gen. Laws ch. 259, § 1, requires that any contract that cannot be fully performed within one year of its making be reduced to writing to be enforceable. See Powers v. Bos. Cooper Corp., 926 F.2d 109, 110 (1st Cir. 1991) ("The Supreme Judicial Court has consistently stated that oral contracts for a term of years are proscribed by the statute of frauds because, by definition, they cannot be performed within a year"). However, this provision "applies only to contracts which by their terms cannot be performed within the year. It does not

apply to contracts which may be performed within, although they may also extend beyond, that period." Doherty v. Doherty Ins. Agency, Inc., 878 F.2d 546, 551 (1st Cir. 1989) (quoting Rowland v. Hackel, 243 Mass. 160, 162 (1922). "[A]ny understanding that a contract was not to be performed within one year must be absolute and certain, and not to depend on any contingency." Joseph Martin, Inc. v. McNulty, 300 Mass. 573, 577 (1938) (explaining and quoting from Peters v. Westborough, 36 Mass. 364, 367 (1837)). Where, as here, the Complaint [#1] is silent as to the time period of performance, and it cannot be readily determined whether the alleged agreements could be performed within one year, the court cannot assess whether the oral contract would come within the parameters of the Statute of Frauds. See e.g., Iron Mountain Inc. v. Carr, 2006 WL 6602266, at *5 (D. Mass. Mar. 13, 2006) (denying motion to dismiss breach of oral contract claim because "it is impossible to determine at this juncture whether such a 'contract' would come within the parameters of the Statute of Frauds" and "[s]uch a determination would be better made at a later stage in the case").

E.   *Promissory Estoppel / Detrimental Reliance (Count V)*

To state a claim for promissory estoppel under Massachusetts law, a plaintiff must allege that "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.'" Loranger Const. Corp. v. E.F. Hauserman Co., 6 Mass. App. Ct. 152, 154 (1978). "When a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory.'" Loranger Const. Corp. v. E. F. Hauserman Co., 376 Mass. 757, 761 (1978). Accordingly, "an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary

elements of a contract other than consideration." <u>R.I. Hosp. Trust Nat'l Bank v. Varadian</u>, 419 Mass. 841, 850 (1995).

Moog alleges that ClearMotion made promises and assurances that, if Moog developed the Aspen Assembly, Moog would be ClearMotion's exclusive supplier of the motor; that based on the parties' long-standing relationship and development efforts, ClearMotion should reasonably have expected Moog to develop the Aspen Assembly; that Moog indeed relied on ClearMotion's promises in developing the Aspen Assembly specifically for ClearMotion, incurring substantial costs in the process; and that ClearMotion's breach resulted in significant damage to Moog. Compl. ¶¶ 27-42, 89-95. This suffices. Moog need not, as ClearMotion argues, allege who made the promise, who accepted the promise, and when it was made. Def's Mem. 12 [#22]. <u>See</u> <u>Neuhoff v. Marvin Lumber & Cedar Co.</u>, 370 F.3d 197, 203–04 (1st Cir. 2004) (quoting <u>Situation Mgmt. Sys. v. Malouf, Inc.</u>, 430 Mass. 875, 878 (2000)) ("[i]t is not required that all terms of [an] agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract"). ClearMotion's additional argument that Moog's reliance was unreasonable, Def's Mem. 11 [#22], is not appropriately considered at this stage in the litigation. <u>See</u> <u>Cataldo Ambulance Serv. v. City of Chelsea</u>, 426 Mass. 383, 387 (1998) ("The question whether a party's reliance on a promise by another is reasonable is often a question of fact").

F.   *Unjust Enrichment (Count VII)*

ClearMotion does not dispute that Moog has sufficiently pleaded its unjust enrichment claim but argues for dismissal on the ground that Moog has remedies at law available for its contract-based claims. Def's Mem. 14–15 [#22]. Although ClearMotion is correct "that damages for breach of contract and unjust enrichment are mutually exclusive, it is accepted practice to

pursue both theories at the pleading stage." <u>Lass v. Bank of Am., N.A.</u>, 695 F.3d 129, 140 (1st Cir. 2012). ClearMotion's motion to dismiss Moog's unjust enrichment claim is therefore denied.

G.    *Chapter 93A, § 11 (Count VII)*

"Under §§ 2 and 11 of Chapter 93A, it is unlawful for those engaged in trade or commerce to employ 'unfair methods of competition and unfair or deceptive acts or practices' in business transactions with others engaged in trade or commerce." <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 55 (1st Cir. 1998). While the statute does not define "unfair" or "deceptive," the Massachusetts courts have consistently held that "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." <u>Id.</u> at 55 (quoting <u>Anthony's Pier Four, Inc. v. HBC Assocs.</u>, 411 Mass. 451, 474 (1991)). "A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." <u>Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.</u>, 217 F.3d 33, 40 (1st Cir.2000). However, "a party who breaches a contract in a deliberate attempt to obtain the benefits of the contract, and to avoid fulfilling its own obligations under it, may have committed an unfair or deceptive act under chapter 93A." <u>Stagikas v. Saxon Mortg. Servs., Inc.</u>, 795 F. Supp. 2d 129, 137 (D. Mass. 2011).

ClearMotion argues that Moog's allegation amounts to a simple breach of contract and that Moog has failed to meet to the plausibility standard under Rule 12(b)(6) and the heightened standard under Rule 9(b). Def's Mem. 18–19 [#22]. First, Rule 9(b) does not apply to this case because Moog is not alleging fraud. See <u>Mulder v. Kohl's Dep't Stores, Inc.</u>, 865 F.3d 17, 21 (1st Cir. 2017) (holding that Rule 9(b)'s heightened pleading standard applies only to ch. 93A

claims where the core allegation is fraud). See also Crisp Human Capital Ltd. v. Authoria Inc., 613 F. Supp. 2d 136, 139 (D. Mass. 2009) ("to the extent it does not involve fraud, a Chapter 93A claim is not subject to a heightened pleading requirement"). Second, Moog alleges more than breach of contract where it claims that ClearMotion knowingly and willfully terminated the parties' relationship with the intent to secure "unbargained-for benefits" to Moog's detriment. Compl. ¶¶ 111–14 [#1]. Specifically, Moog alleges that the timing of ClearMotion's termination of the relationship—when Moog had completed development of the Aspen Assembly but before any sales could take place—demonstrates malicious intent by ClearMotion to benefit from Moog's development efforts while depriving Moog of any benefit from those efforts. Id. ¶¶ 113– 14. Under Rule 12(b)(6), Moog "need do no more than allege conduct that, if proven, could be found to constitute an unfair or deceptive practice," Aware, Inc. v. Centillium Commc'ns, Inc., 604 F. Supp. 2d 306, 312 (D. Mass. 2009). Because Moog has met this standard, the claim survives dismissal.

H.    *Misappropriation Claims (Counts VIII-X)*

Moog's final three claims allege that ClearMotion misappropriated trade secrets and confidential information in violation of Massachusetts common law; Mass. Gen. Laws ch. 93, §§ 42, 42A-42C; and the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA"). ClearMotion moves to dismiss all three claims on the ground that Moog failed to plead facts sufficient to establish the existence of any trade secrets allegedly misappropriated by ClearMotion. Def's Mem. 15–18 [#22].

To state a claim for misappropriation of trade secrets under Massachusetts law, a plaintiff must establish that (1) the information is a trade secret; (2) the plaintiff "took reasonable steps to preserve the secrecy of the information"; and (3) "the defendant used improper means, in breach

of a confidential relationship, to acquire and use the trade secret." Incase Inc. v. Timex Corp.,

488 F.3d 46, 52 (1st Cir. 2007). The common law and statutory claims are "essentially

equivalent." Id. at 52 .10. See also Burten v. Milton Bradley Co., 763 F.2d 461, 462 (1st Cir.

1985) ("Appellants amended complaint alleged . . . two counts of trade secret misappropriation,

one based on common law tort and the other on Mass. Gen. Laws ch. 93, § 42, which essentially

codifies the common law"). A plaintiff may also bring a misappropriation claim under the DTSA

if the trade secret is related to a product or service intended to be used in interstate or foreign

commerce. 18 U.S.C. § 1836(b)(1). The standards for misappropriation under the DTSA and the

Massachusetts statute are substantially similar. Compare 18 U.S.C. § 1839(5)-(6), with Mass.

Gen. Laws ch. 93, § 42(1)-(2).

A trade secret is any confidential information used in the plaintiff's business that "gives

[the owner] an advantage over competitors who do not know or use it." J.T. Healy & Son, Inc. v.

James A. Murphy & Son, Inc., 357 Mass. 728, 736 (1970) (quoting RESTATEMENT; TORTS § 757

comment (b)). Matters of public knowledge or of general knowledge within an industry cannot

be trade secrets. Id. In an action alleging misappropriation of trade secrets, Massachusetts law

requires a plaintiff to state "with reasonable particularity the circumstances thereof, including the

nature of the trade secrets and the basis for their protection." Mass. Gen. Laws ch. 93, § 42D(b).

Moog's Complaint ¶¶ 127, 140, 143 [#1] identifies its trade secrets as its drawings,

design specifications, manufacturing methods and work instructions, material data sheets, and

process specifications related to the Aspen Assembly. ClearMotion argues that Moog does not

"identify with adequate specificity the trade secret or proprietary information that was allegedly

misappropriated by the defendant," Ferring Pharm. Inc. v. Braintree Labs., Inc., 38 F. Supp. 3d

169, 175 (D. Mass. 2014), and that "a precise identification of the alleged trade secret is a crucial

component of trade secret litigation," Iconics, Inc. v. Massaro, 266 F. Supp 3d 449, 456 (D. Mass. 2017), such that the misappropriation claims must be dismissed. Def's Mem. 23 [#22]. But where Moog claims that the Aspen Assembly was "designed specifically and exclusively for ClearMotion," and was not "intended to be produced for any other purpose," Compl. ¶¶ 2, 35, the parties' NDA [#1-1] acknowledged that the parties would be disclosing confidential information, and the MOU [#22-1] made clear that the disclosures were in connection with the development of a manufacturing and supply agreement using the parties' protected intellectual property, ClearMotion has sufficient notice at the pleading stage that Moog's trade secrets concern the design and manufacture of the Aspen Assembly. Moog adequately distinguishes that which is public knowledge from the trade secrets that ClearMotion allegedly misappropriated. See J.T. Healy & Son, Inc., 357 Mass. at 736.[6]

Moog further alleges that its trade secrets pertaining to the design and manufacture of the Aspen Assembly created substantial, independent economic value based on their confidentiality and that, consequently, Moog took reasonable measures to protect the information. Compl. ¶¶ 15-17, 118-120, 127-129, 141-142. Finally, Moog claims that ClearMotion disclosed these trade secrets to potential vendors when seeking other manufacturers of the Aspen Assembly, id. ¶¶ 121, 130, 144; that Moog demanded that ClearMotion return its trade secret information and cease any unauthorized use and disclosure of such information, id. ¶ 135; and that ClearMotion failed to comply without any justification and continues to disclose Moog's trade secrets, id.

---

[6] The pleadings here are distinguishable from the complaint at issue in Tr. Safe Pay, LLC v. Dynamic Diet, LLC, No. CV 17-10166-MPK, 2017 WL 3974949 (D. Mass. Sept. 8, 2017), where the plaintiff claimed merely "an 'algorithm' to facilitate the online marketing of a [house cleaning] business" without any explanation of why such matters would plausibly rise to the level of a trade secret. Even there, the dismissal of the claim was without prejudice.

Moog has therefore plausibly pleaded misappropriation of trade secrets under Massachusetts and

Federal law, and ClearMotion's motion to dismiss these claims is denied.

**III.     Conclusion**

ClearMotion's Motion to Dismiss [#21] is DENIED.

IT IS SO ORDERED.

October 21, 2020                                              /s/ Indira Talwani
                                                                    United States District Judge